In the Matter of the Application of THE MARINE TRUST COMPANY OF BUFFALO, as Successor Trustee under the Last Will and Testament of ADELAIDE R. KENNY, Deceased, for the Judicial Settlement of Its Accounts as Trustee of the Trust Created for the Benefit of ADELAIDE K. RICHMOND THOMAS, and for the Determination of the Court as to the Validity, Construction and Effect of Certain Dispositions of Property Contained in the Last Will and Testament of ADELAIDE R. KENNY, Deceased.

WATTS LANSING RICHMOND and Others, Appellants; HENRY R. HOWLAND and Others, as Executors, etc., of HENRY A. RICHMOND, Deceased, Appellants, Respondents; MARINE TRUST COMPANY OF BUFFALO and Others, Respondents.*

Fourth Department, June 29, 1928.

* See 128 Misc. 553.

*Walter C. Newcomb, Martin Clark* and *Louis E. Desbecker,* for the appellant Watts L. Richmond.

*Mark N. Turner, Franklin R. Brown* and *Louis Frankel,* for the appellant Rosalind Richmond Diefenderfer.

*Thomas R. Wheeler,* for the executors of Henry A. Richmond, deceased, appellants, respondents.

*Edward A. Washburn,* for Edward Dean Richmond and Ruth Richmond Thomasson, appellants, respondents.

*Guy B. Moore,* for Harold Richmond, individually, and as administrator of W. Eugene Richmond and others, appellants, respondents.

*Roland Crangle,* in person, as executor of Frances Richmond, deceased, respondent.

*Bayard J. Stedman* and *Fred A. Lewis,* for the executors of Adelaide K. Richmond Thomas and others, respondents.

*Allen Keeney,* for the respondent Marine Trust Company of Buffalo.

SEARS, J.   The fundamental question in this case relates to the construction of the " thirty-third " paragraph of the will of Adelaide R. Kenny, which reads as follows:

" All the rest, residue and remainder of my estate, real and personal, and wherever situated or however held, I give, devise and bequeath as follows: My executors shall hold the same in trust, as well the personal estate as the avails of the sale of the real estate as the same shall be sold; they shall keep the same carefully invested and pay the interest and income derived therefrom to my niece Adelaide Kenny Richmond during her lifetime. In case she shall leave her surviving two or more children, such

residuary estate and the whole thereof shall upon the decease of my said niece, go to, and become the absolute property of such children in equal shares. In case she shall leave surviving her only one child, such child shall, upon and after the decease of my said niece, take and have an equal one-half of all said residuary estate, absolutely, and the remaining one-half shall go to and become the property of my nephew, Watts Lansing Richmond, if living, otherwise to his lineal descendants in equal shares; or in case he shall have died before my niece Adelaide Kenny Richmond, leaving no descendants, then twenty-five thousand dollars thereof shall be paid and delivered to my cousin, Dean Chester, if living, and twenty-five thousand dollars thereof to my cousin Reverend Dean Richmond Babbitt, if living, and the residue, including either or both of said twenty-five thousand dollar bequests in case of lapse thereof, shall be divided equally between my nephews Harold Richmond and Dean Richmond, and my niece Frances Richmond. In case any of said three persons last named shall have died, leaving a child or children, such child or children shall take the share of the parent. In case any of them shall have died leaving no descendants, such fund shall be divided between the others, the children of any deceased one to take the share of the parent.''

The testatrix died on the 4th day of February, 1905. At the time of her death her heirs and next of kin were Henry A. Richmond, a brother, W. Eugene Richmond, a brother, Edward Dean Richmond and Ruth Richmond, a nephew and niece, who were the children of Edward Dean Richmond, a deceased brother of the testatrix, and Rosalind A. Richmond, now Rosalind Richmond Diefenderfer, a niece, the daughter of Alfred Richmond, a deceased brother of the testatrix. Henry A. Richmond has since died and his executors are parties to this proceeding. He never married. W. Eugene Richmond has since died, and the administrator of his estate is a party to this proceeding. He had six children: Watts Lansing Richmond, W. Eugene Richmond, Jr., Harold Richmond, Dean Richmond, Frances Richmond and Adelaide K. Richmond, who afterwards married Frank Thomas. Watts Lansing Richmond, W. Eugene Richmond, Jr., Dean Richmond and Harold Richmond are living and parties to this proceeding. Frances Richmond has died and the executor of her will is a party to this proceeding. Adelaide K. Richmond Thomas died without issue. The executors of her will, and her husband individually, are parties to this proceeding. Edward Dean Richmond, Ruth Richmond and Rosalind Richmond Diefenderfer are parties to this proceeding. The Marine Trust Company of Buffalo, the successor trustee under the will of Adelaide R. Kenny, is the petitioner which instituted this proceeding.

The question under the " thirty-third " paragraph of the will is whether Watts Lansing Richmond is entitled to any interest thereunder, inasmuch as Adelaide Kenny Richmond Thomas left no child surviving her. The will is a voluminous one. Many bequests are made to charities and other institutions. Some provision is made for relatives other than those mentioned above. No provision whatever is made in the will for the families of either of her brothers who were deceased at the time of her death. Her only immediate relatives (brothers and their descendants) who are mentioned or provided for are her brother Henry and her brother Eugene, the children of Eugene and their descendants. The income for life of a trust fund of $100,000 is given to the testatrix's brother Henry, together with a life estate in certain personal property. A like trust of $100,000 is created for the benefit of the testatrix's brother Eugene for life. Trust funds of $20,000 each are established for W. Eugene, Harold, Dean and Frances Richmond, children of testatrix's brother Eugene, with remainders to their respective children and with power to dispose of the principal sums by will in default of children, and cross-remainders in default of children and failure to dispose by will. Adelaide Kenny Richmond Thomas, the daughter of testatrix's brother Eugene, in addition to the provisions in the " thirty-third " paragraph, is given a life estate in the testatrix's residence in Batavia, and its contents, with power to dispose of same by will (with certain minor exceptions) to any child of hers, with remainder; in case of her failure to make such disposition, to her oldest daughter, or if she leave no daughter, to her oldest son, or in case she leave no children, to her brother Watts Lansing Richmond, if then living, or if he should not then be living, to the oldest surviving male lineal descendant of testatrix's brother Eugene, or if there be no male lineal descendant surviving, then to the oldest surviving female lineal descendant. There is also a provision for the creation of a trust fund of $100,000 for the benefit of Watts Lansing Richmond for life in case the real estate should pass to him, but if it should not pass to him, but to descendants of Adelaide, or on his death if the real estate passed to him, $40,000 of such $100,000 is to be divided among the lineal descendants, *per stirpes*, of the testatrix's brother Eugene, excluding the descendants of her niece Adelaide and her nephew Watts, and the remaining $60,000 is given to certain charities. To Adelaide is also given the testatrix's wearing apparel, jewelry, horses, carriages and other vehicles. The testatrix's nephew Watts is also given a residence in the village of Batavia; $3,000 to finish furnishing the house (unless this had been completed before the death of testatrix) and a trust fund of $100,000 in certain capital stock

(or $150,000 in case testatrix should not own such stock at her death) is created for his benefit for life, the principal to pass to his children surviving him at his death.

It is the claim of the appellant Watts that under the "thirty-third" paragraph of the will, even though his sister Adelaide left no children surviving her, he is entitled at least to half, if not to all of the residuary estate. The respondents on the other hand contend that the existence of a child of Adelaide at the time of her death was an absolute condition precedent to the right of Watts to receive any part of the residuary estate. The appellant Watts urges that the intention of the testatrix was to give him at least one-half of the residue of the estate unless his sister Adelaide was survived by two or more children and that such intention is apparent on the face of the will. The respondents rely on the literal language of the paragraph and urge that the words "only one child" can mean nothing other than "at least one child and not more than one child," and assert that any other construction would not be an interpretation, but the distortion of language to such an extent as to amount to the making of a new will for the testatrix.

No authority in this State, or in fact in the United States, is cited where language closely resembling that contained in this will is construed.

We appreciate that the courts must take the will as it is; must not devise a new scheme or make a new will, and must not give to words and phrases other than their ordinary and literal meaning. (*Matter of Disney*, 190 N. Y. 128; *Matter of Russell*, 168 id. 169; *Tilden* v. *Green*, 130 id. 29; *Brown* v. *Quintard*, 177 id. 75; *Dreyer* v. *Reisman*, 202 id. 476.)

On the other hand, great latitude is given to courts to render effective imperfectly expressed testamentary intention. (*Dreyer* v. *Reisman, supra.*) "Courts may, it is true, transpose words and phrases, and read the provisions of a will 'in an order different from that in which they appear in the instrument, insert or leave out provisions if necessary, but only in aid of the testator's intent and purpose; never to devise a new scheme or make a new will.'" (*Leggett* v. *Stevens*, 185 N. Y. 70; *Trask* v. *Sturges*, 170 id. 482; *West* v. *West*, 215 App. Div. 285.) In the interpretation of a will the consideration of paramount importance is to discern the intention of the testator as expressed in the will. All other rules for the interpretation of wills are subordinate to the requirement that the intention of the testator should be sought and given effect when that may lawfully be done. (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573, 580; *Matter of Buechner*, 226 id. 440; *Close* v. *Farmers'*

*Loan & Trust Co.*, 195 id. 92.) There is another subordinate canon of construction which has some bearing on the construction of this instrument, viz., that between two possible constructions, that is to be preferred which avoids intestacy. (*Matter of Schriever*, 221 N. Y. 268; *Hadcox* v. *Cody*, 213 id. 570; *Ward* v. *Stanard*, 82 App. Div. 386.)

Can the intention of the testatrix be discovered from this will? First of all it is apparent that the testatrix was particularly interested in the family of her brother Eugene. Except for the trust of $100,000 for the benefit of her brother Henry for life, her brother Eugene and his children are the only immediate relatives (brothers and their descendants) named in the will. *Secondly*, it is apparent that of the children of the testatrix's brother Eugene, Adelaide is the one in whom the testatrix was particularly interested, and after her, Watts. This appears from the provisions in relation to the testatrix's residence and other· real estate in Batavia, and from the other provisions made for them aside from the dispositions provided for in the " thirty-third " paragraph. Coming now to the residuary estate, amounting to about a million dollars, we can see that the testatrix desired this estate to go, on the death of Adelaide, to Adelaide's children, but that she believed that the residuary estate was too large for any one child to inherit. This appears from the scheme of distribution among Adelaide's children. If there were two or more children, no child could receive more than one-half. If there were one child and one child only, the provision for that child was limited to one-half. Thus no child could in any event receive more than one-half. Then a sub-· ordinate intention becomes apparent. If the distribution to one child only left a balance, it was the testatrix's intention and desire that one-half of the residuary estate should pass to her nephew Watts in whom her interest had been shown elsewhere in the will. The primary intention then was that the children of Adelaide should take, but no child more than one-half. If that left a balance of one-half, Watts was to take that one-half. The reason why Watts was only given a substitutionary legacy and not an original one as to one-half of the residue after the death of Adelaide, was manifestly that the testatrix desired the children of Adelaide to take in preference to Watts. If, however, children of Adelaide did not stand in the way, there was nothing to prevent the testatrix's subordinate intention that Watts should share in the residue from being carried out. The circumstance of Adelaide having a child or children was not a reason for giving the legacy to Watts. The circumstance of her having children was the reason for not giving a primary legacy to Watts. In respect to the

legacy to Watts, what the testatrix had in mind to guard against was that a legacy to Watts might prevent the children of Adelaide from receiving the residuary estate upon their mother's death up to a maximum of one-half of the residuary estate to any one child. In providing for Watts, she was not guarding against an absence of children to Adelaide, for an absence of children would offer no obstacle to the accomplishment of her generous purpose toward him. The provision in case " only one child " of Adelaide survived her is in contradistinction only to the provision in case " two or more children " survived her, and, we believe, was intended to cover, so far as Watts was concerned, all possible contingencies. Such, we think, is the intention of the testatrix as disclosed by this instrument. Is the language so clear and unambiguous that the intention cannot be carried out? We do not think so. The phrase " only one child," so far as it relates to the bequest to the child itself, is, of course, affirmative; as it relates to Watts, we reach the conclusion that the phrase means not more than one child; that it is a phrase of limitation rather than of condition.

In 1813 a case was determined in England where a will very similar to the will now before us was construed. (*Murray* v. *Jones*, 2 V. & B. 313.) There Lady Bath left a will which provided in substance that if she had but one child living at her death, certain property should go to a friend and relative, Mrs. M., and her issue. Sir W. GRANT, M. R., construed the phrase " but one child " to mean " not more than one child." The argument of the master of the rolls is similar to the argument advanced above, and we rely, not upon the case as a precedent, but on the strength of the argument therein contained. We recognize that it is possible to distinguish the case because of other language contained in the will. We take the argument rather than the decision as our authority. There are other English cases presenting in a general way the same reasoning. (*Jones* v. *Westcomb*, 1711, Prec. Ch. 316; *Aiton* v. *Brooks*, 8 Eng. Ch. [7 Simons] 204; *Underwood* v. *Wing*, 1855, 4 DeG. M. & G. 633; *Brock* v. *Bradley*, 33 Beav. 670; *Wilkinson* v. *Thornhill*, 61 L. T. 362.) The argument in *Murray* v. *Jones* is approved in Jarman on Wills (Vol. 2 [6th Eng. ed.], 2195). (See, also, Theobald Wills [7th ed.], 655.) The case is cited with apparent approval in *McLean* v. *Freeman* (70 N. Y. 81). We believe our interpretation is justified by the intention of the testatrix as shown by the will. We have taken into consideration the fact that it saves one-half of the estate from intestacy.

We find, however, no intention to give Watts more than one-half of the residue.

A further claim is advanced by the appellant Watts L. Richmond

that even if the will discloses no intention to give him more than half, still there is no intestacy as to the half which was specifically bequeathed to the child of Adelaide because of the provisions of paragraph " thirty-fifth " of the will which reads as follows: " In case any other provision contained in this will, or in any devise or bequest, whether specific, general or residuary, shall for any reason be adjudged invalid in whole or in part, then and in that case I order and direct that all property, real or personal, affected by such adjudication or decision shall be disposed of as follows: The same shall be held in trust by my executors and the income derived from the investment thereof shall be paid to my niece Adelaide Kenny Richmond for life, and upon her decease such property shall be distributed among the persons who shall comprise her next-of-kin at the time of her decease, excluding her parents, and according to the New York Statute of Distributions."

The appellants, who are brothers of Adelaide and Watts, also contend on the basis of paragraph " thirty-fifth " that there is no intestacy. We reject this contention. The provision for the benefit of the children of Adelaide is not adjudged invalid. On the contrary, the provision is altogether sound and valid. The only obstacle to carrying it out is that no persons exist to fit the description of the legatees. We cannot extend the meaning of the words " adjudged invalid " beyond the technical one, that is, " determined by an adjudication to be contrary to law." In respect to certain other legacies in the " thirty-fourth " paragraph of the will, the words used are, " lapse or fail, or for any cause not take effect." The narrower term, " adjudged invalid " seems to have been deliberately chosen (*Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462) and must be given its technical meaning.

The conclusion follows that there is an intestacy as to one-half of the residue.

A further question is raised by the appeal of Rosalind Richmond Diefenderfer as to the validity of a formal written assignment of all her interest in the estate to Adelaide K. Thomas, executed and delivered by her on the 8th day of May, 1905, for a valuable consideration. As to this matter it is sufficient to say that we agree with the determination of the learned surrogate.

The decree should be modified in accordance with this opinion, and as modified affirmed, with a bill of costs payable out of the estate to Watts L. Richmond, to the executors of the estate of Henry A. Richmond, to Roland Crangle, as executor, to the Marine Trust Company of Buffalo, as trustee, to Edward D. Richmond and Ruth Richmond Thomasson, to Harold Richmond, individually and as administrator of W. Eugene Richmond, deceased, Dean

Richmond and W. Eugene Richmond, separately filing briefs, and with costs to Fred A. Lewis and Frank Thomas, as executors of the will of Adelaide K. Thomas against the appellant Rosalind Richmond Diefenderfer. Conclusions in conflict with this opinion should be disapproved and reversed and new conclusions made in accordance therewith.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Decree modified in accordance with the opinion and as modified affirmed, with a bill of costs to parties appearing upon this appeal and separately filing briefs, except the executors of Adelaide Thomas and Rosalind Diefenderfer, payable out of the estate, and with costs to the executors of Adelaide Thomas against Rosalind Diefenderfer. Conclusions of law in conflict with the opinion disapproved and new conclusions made in accordance therewith. Settle order before TAYLOR, J., on two days' notice.