.n the Matter of the Estate of MICHAEL WINBURN, Deceased.

Surrogate's Court, New York County, August 26, 1931.

*Olvany, Eisner & Donnelly* [*Mark Eisner* of counsel], for the executors and trustees.

*Bert Cohen,* for Carrie Shelley, Harold M. Shelley, Ida Schnitzer and Annette Evans, beneficiaries.

*Weinberg Brothers,* for Hattie Weinberg and Phoebe Cohen.

*Gibboney, Johnston & Flynn* [*Stuart G. Gibboney* of counsel], for Marie Winburn, legatee, and wife of Michael Winburn.

*Jacob Manheimer,* for Harold Wineburgh, petitioner.

*Sperry & Yankauer* [*Joseph M. Proskauer, Walter D. Yankauer* and *J. Alvin Van Bergh* of counsel], for Henry Wineburgh, Mabel Wineburgh, Clarence Wineburgh, Harold Wineburgh and Irene Schiff.

*Roe & Kramer* [*Clinton T. Roe* of counsel], for Eva Clayburgh and John Winburn.

*Harry Miller* [*Frederick E. Klein* of counsel], for Ruth Anekstein.

*Joseph P. Shelby* [*George L. Livingston* of counsel], for The People's Dispensary for Sick Animals of the Poor (Incorporated) of London, England.

*Barry, Wainwright, Thacher & Symmers,* for American Society for the Prevention of Cruelty to Animals.

*Rumsey & Morgan,* for Massachusetts Society for the Prevention of Cruelty to Animals.

*Brussel & Beebe,* for Abraham Wineburgh.

FOLEY, S. The decree admitting the will of the decedent to probate reserved for future consideration the construction of his will, particularly the residuary, or 41st, clause thereof. That question must now be determined. Because of the issues involved it becomes necessary to set forth the language of the will at length. The clause in dispute reads as follows:

" *Forty-first.* I direct that all the rest, residue and remainder of my estate, real, personal or mixed, of whatsoever kind, nature and character, wheresoever the same may be or be situated at the time of my decease, be divided into three shares or parts as hereinafter described and disposed of as follows:

" One (1) share or part consisting of fifty per cent (50%) of my said residuary estate; the second (2nd) share or part consisting of twenty-five per cent (25%) thereof; the third (3rd) share or part consisting of twenty-five per cent (25%) thereof.

" (a) I give, devise and bequeath the first share or part con-

sisting of fifty per cent (50%) of my residuary estate, to my Executors and Trustees hereinafter named, in trust nevertheless, for the following uses and purposes; to collect and receive the rents, interest, income and dividends therefrom (hereinafter referred to as income) and to pay the net income therefrom after deducting all proper charges and expenses to my beloved wife, Marie Winburn, in equal quarterly instalments, and upon the decease of my said wife, to pay over, grant and convey Two hundred and fifty thousand ($250,000.) Dollars of the principal of said trust fund, to La Nouvelle Etoile Des Petits Enfants De France as an endowment fund and the income therefrom shall be used solely for the benefit, support and maintenance of the ' Fondation Winburn ' situated at Courbevoie (Seine) Republic of France.

" (b) In the event that The Peoples Dispensary for Sick Animals of the Poor (Incorporated) of London, England, accept in writing the legacy left to this Society in paragraph ' Twenty-second,' of this my Last Will and Testament, I give, devise and bequeath to the People's Dispensary for Sick Animals of the Poor (Incorporated) of London, England, the sum of Two hundred and fifty thousand ($250,000.) Dollars of the capital of said trust fund created for the benefit of my wife, Marie Winburn, during her life, as an endowment fund, the income therefrom to be used solely for the purposes of support, maintenance and upkeep of the ' Fondation Winburn Pour Animaux ' situated in or near Paris, Republic of France. In the event that The People's Dispensary for Sick Animals of the Poor, (Incorporated) of London, England, refuse the legacy mentioned in paragraph ' Twenty-second ' of this my Last Will and Testament, then this bequest of Two hundred and fifty thousand ($250,000.) Dollars shall not go into effect, and same shall revert to my residuary estate.

" (c) In case of the death of · my wife, Marie Winburn, before me or simultaneously with me, the said trust estate herein created for her benefit, shall not go into existence and the principal thereof shall be disposed of as above indicated to wit: Two hundred and fifty thousand ($250,000.) Dollars to The Nouvelle Etoile Des Petits Enfants De France as an endowment fund for the benefit of the ' Fondation Winburn ' situated at Courbevoie (Seine) Republic of France; and Two hundred and fifty thousand ($250,000.) Dollars to The People's Dispensary for Sick Animals of the Poor, (Incorporated) of London, England, as an endowment fund for the benefit of the ' Fondation Winburn Pour Animaux ' in or near Paris, Republic of France. In the event that this latter Society does not comply with stipulations set forth in paragraph ' Twenty-second ' of this my Last Will and Testament, then this said bequest

shall not go into effect, and same, together with all the balance and remainder of the principal of the trust fund created for the benefit of my wife, Marie Winburn, shall revert to my residuary estate and become part of the trust estates created for the benefit of my sisters, Carrie Shelley and Ida Schnitzer, share and share alike, according to sections (d) and (e) of this paragraph as follows."

Subdivision (d) bequeaths the second share of twenty-five per cent of the residuary estate, in trust, for the benefit of the testator's sister, Carrie Shelley, during. her life, with remainder over to her son, Harold M. Shelley, or in case of his prior death, to his issue. Subdivision (e) bequeaths the third share, consisting of twenty-five per cent of the residuary estate, in trust, for the benefit of the testator's sister, Ida Schnitzer, with remainder over to her daughter, Annette Evans, or in case of her prior death, to her issue *per stirpes*.

The residuary clause may be summarized as follows: Fifty per cent of the residuary estate is bequeathed in trust for the benefit of testator's wife during her life. Upon her death a legacy of $250,000 is given to La Nouvelle Etoile Des Petits Enfants de France. On the death of the wife an additional $250,000 is bequeathed to The People's Dispensary for Sick Animals of the Poor, of London, should it accept in writing a legacy previously given in the will in paragraph 22. The residuary clause also provides for the payment of these two legacies of $250,000 should the wife die previous to or simultaneously with the testator. The dispute arises over the disposition of the remainder of the trust fund created for the benefit of his wife during her life.

The wife survived the testator. Certain of his heirs at law and next of kin claim that the testator died intestate as to the remainder limited on the beneficial life interest of the widow in one-half of his residuary estate, less the legacies of $500,000 to the two designated institutions. Their contention· is that by the 41st paragraph of his will the testator disposed of the remainder in the half of his residuary estate only in the event, first, that his wife predeceased him, or died simultaneously with him; and, secondly, in the event that The People's Dispensary for Sick Animals of the Poor refused a legacy bequeathed [in the will under the 22d paragraph thereof. In other words, they claim that the balance of the remainder limited on the wife's life estate is not disposed of validly in the event that she survived the testator, and they argue that the will failed to make any disposition of the remainder in that event.

The residuary estate of the testator is in excess of $4,000,000. The question raised in this proceeding gains added importance when it is borne in mind that this court is asked to find that the testator failed to validly dispose of more than $1,500,000 of his

residuary estate, and died intestate as to that amount of his property.

The general testamentary scheme of the testator is simple, and clearly evidences his intention to dispose of his entire estate. The will begins as follows: " I, Michael Winburn, * * * do make, publish and declare this as and for my last will and testament relating to *all my estate, wheresoever located of which I may die seized or possessed or to which I may be entitled at the time of my* decease." (Italics mine). The intent to avoid any intestacy is thus forcibly emphasized. The 2d paragraph bequeaths $100,000 to his wife. The two sisters mentioned in the residuary clause are included as legatees in the sum of $25,000 each among over fifty other legatees who are recipients of varying amounts and benefits. The paragraphs of the will granting annuities expressly provide in each instance that should the annuitant predecease the testator, the " trust estate " shall not come into existence but " shall remain a part of my residuary estate." A similar direction is given in the event that his secretary and Judge Samuel D. Levy, for whom trust funds were created, should predecease the testator. The will also provides that upon the death of the annuitants and the two life beneficiaries mentioned above, the fund in each instance was to be paid to his wife and two sisters outright. They are the primary life tenants of the residuary estate. There can be no doubt, therefore, that the testator, with every intention to dispose of his entire estate, made his wife and two sisters the principal beneficiaries under his will. A reading of the entire testamentary instrument makes that plain, and it is from a reading of the entire will, rather than any particular portion thereof, that the intention of the testator must be ascertained. Citation of authorities is unnecessary to support this fundamental principle of construction. Nor is it necessary to mention the many decisions which emphasize and apply the rule that intestacy is to be avoided whenever possible.

The next of kin rely on a technical and restricted interpretation of the 41st paragraph alone, and particularly of subdivision (c). The construction urged by them, if adopted, would invalidate the bequest of over $1,500,000 upon the acceptance by The People's Dispensary for Sick Animals of the Poor of a legacy of less than $200,000 given to that institution in paragraph 22 of the will. That institution has accepted the legacy. The argument urged by the next of kin, carried to its extreme limit, results in an interpretation so incongruous and so at variance with the testator's testamentary scheme that it cannot be adopted. They rely on a piecemeal interpretation, and seek to arrive at the testator's intent by singling out specific sentences and clauses in the will as controlling. They

avoid a construction which would have as its basis an interpretation of the complete will. If their contention is to be sustained, the first sentence of subdivision (c) made no valid disposition of the balance of the fund, if the wife had predeceased the testator. Likewise, by the second sentence of subdivision (c) the acceptance of the legacy given in paragraph 22 by The People's Dispensary for Sick Animals of the Poor would also, if their interpretation be adopted, result in the failure of the testator to dispose of the balance of the trust fund created for the benefit of his wife. Finally, only in the event of that institution refusing the legacy given it in paragraph 22 of the will, and forfeiting the legacy bequeathed in subdivision (c), would the testator have validly bequeathed the balance of the remainder of the widow's trust. Were these contentions sustained, it would result in a frustration of the comprehensive testamentary plan of the testator by dislocating and treating as independent, certain selected sentences and clauses of the will. It is a fundamental rule of construction that the instrument must be taken in its entirety in order to ascertain the legal import of its language and to give effect thereto. (*Mee* v. *Gordon*, 187 N. Y. 400, 405.)

In view of the language of the 41st paragraph, when considered in its entirety, the contentions of the next of kin must be overruled. It is clear that the residuary clause is inartificially drawn. That, however, cannot prevent this court from giving effect to the general import of the language of that clause and the intention it discloses. His intention was to bequeath his entire residuary estate for the benefit of his wife, his two sisters and the ultimate remaindermen. If the artificial subdivisions made by the testator are ignored, this intention may be validly carried out. The gift over of the entire remainder is not dependent on the death of the wife before, or simultaneous with, or after the testator, or upon the refusal of the legatee mentioned in paragraph 22 to accept its legacy. These conditions were not conditions precedent to a valid gift over of the fund. So far as the legal effect of the instrument under consideration here is concerned, it was unnecessary for the testator to have included the preliminary part of subdivision (c) in the 41st paragraph of his will. While inaptly drawn, the presence of this subdivision simply indicates the extreme care with which testator sought to make a complete disposition of his estate in all the contingencies contemplated by him. Undoubtedly he was unaware of the general rule laid down by the decisions, that the death of the primary life tenant before the testator does not prevent the vesting of the ultimate gifts. The taking effect of a primary life estate has never been regarded as a necessary condition to sustain the validity of remainders limited thereon. (*Matter of*

*Fordham,* 235 N. Y. 384; *U. S.. Trust Co.* v. *Hogencamp,* 191 id. 281; *Williams* v. *Jones,* 166 id. 522; *Norris* v. *Beyea,* 13 id. 273; *Matter of Knapp,* 206 App. Div. 260; *Matter of Blumenthal,* 124 Misc. 850; Real Prop. Law, § 58.)

The final clause of subdivision (c) clearly disposed of the remainder of the fund under subdivisions (a) and (b). The testator intended a complete disposition of the fund under every contingency by the direction that " all the balance and remainder of the principal of the trust fund created for the benefit of my wife, Marie Winburn, shall revert to my residuary estate and become part of the trust estates created for the benefit of my sisters."

I hold that the testator not only intented but actually did, bequeath by his will the balance of the fund to the secondary trusts created for the. lives of his two sisters. I hold further that the fund in question will ultimately pass to the remaindermen of these two secondary trusts.

The conclusion reached by me in this matter is supported by the decisions of the courts of this State. They have gone to great length to give effect to the intention of the testator, when ascertained, although that intention is inadequately stated, or to effectuate a gift by implication. *Matter of Schriever* (221 N. Y. 268) is particularly in point. In that case the testator by the 1st clause of his will, gave the income of all his estate to his wife " while she remains my widow, should she remarry I want my estate to be divided as follows as written & mentioned in page 2 of this will." There was no express gift over in the event of the death of the wife. The Court of Appeals held that the gifts to the daughter, the nephew, the brother-in-law and the son of the testator, as provided for " on page 2 " of his will, were all equally conditioned upon either the death or the remarriage of the widow. Judge ANDREWS (p. 272) wrote: " It is not an unfair construction that where a testator gives to his wife a life estate with remainder over if she remarries, he has in mind the ending of the life estate by death as well. * * * Any other construction of the will is unreasonable. No satisfactory explanation can be given of a provision that would give $5,000 to a nephew if the wife remarried — nothing if she died." It is equally clear in this estate that no satisfactory explanation can be made of a provision that would give $1,500,000, the balance of the fund, to the secondary trusts if the widow predeceased the testator or died simultaneously with him, but would give the secondary trusts nothing if she survived him. Neither is it logical to assume that he gave that large amount to the secondary trusts if the English charitable corporation declined its legacy, but not a penny to the secondary trusts if the charitable corporation accepted it.

In *Close* v. *Farmers' Loan & Trust Co.* (195 N. Y. 92) the Court of Appeals sustained a gift over to remaindermen by implication from the language of the will. In that case the testator provided by the 6th paragraph of his will:

"*Sixth.* To my daughter Marie Ema Seward I also give one other equal sixth part of said remaining two-thirds, the same also to be invested by my executors for her benefit in such securities as they may elect, and the interest arising therefrom to be paid to her semi-annually, and in the event of the said Marie Ema dying without issue, then the proceeds of said share to be divided among her brothers and sisters share and share alike."

Mrs. Seward died with issue. It is stated by Judge VANN: "As he did not give the fee or the principal, for the clause in question covered both real and personal property, to his daughter, and he gave the remainder to her brothers and sisters only if she died 'without issue,' the necessary conclusion, in view of the presumptions mentioned above and the circumstances surrounding him when he made his will, is that he intended to give the remainder to her children, if she died 'with issue.' They thus took under the will by an implication which has strong support in the adjudged cases." (See, also, *Bishop* v. *Bishop,* 257 N. Y. 40, 48; *Matter of Hoffman,* 201 id. 247; *Matter of Kenny,* 224 App. Div. 152; affd., 250 N. Y. 594; *Matter of Miner,* 146 id. 121; *Marsh* v. *Hague,* 1 Edw. Ch. 174.)

In view of the conclusion reached by me, that there was a valid disposition of the whole fund, the claim of the widow that the testator made a gift to her of the income of one-half of his residuary estate without limitation with respect to the time of enjoyment, and that consequently he thereby made an outright gift to her of the principal itself, less the bequests of $500,000 to two institutions, effective upon her death, cannot be sustained.

On the argument of the question before me certain extrinsic evidence was taken which establishes that the will was not drawn by an attorney but was copied by the secretary of the decedent from a former will upon which he had made marginal notes of the changes desired by him. In the disposition of this matter, however, I have disregarded this evidence, preferring to construe the will on the face and language of the instrument itself.

Submit decree on notice construing the will accordingly.