John C. Boylan, S.
This is a proceeding to construe the last will and testament of Michael Berardini, deceased, which was duly admitted to probate on May 24, 1924. Decedent died January 24, 1924.
After the usual provision for payment of debts and funeral expenses, the testator in sections second through eighth, made various modest bequests to his three sisters, a nephew, an employee, and a town in Italy.
In section ninth of said instrument decedent made provision for a daughter, Loretta Aocunto ; as follows: ‘ ‘ ninth : I give and bequeath to my daughter, loretta accunto, a life interest in the sum of $75,000, and in the event, that my said daughter should remarry, it is my wish, that the income from this fund shall cease and determine at once, and that the said principal sum be forthwith paid over and distributed to my daughter’s children, share and share alike, but that the said principal and income shall not be distributed, until the youngest child of my said daughter, now in being, shall attain the age of 21 years.”
In section twelve, testator created a trust of $50,000 for the children of his son Alphonse.
In section thirteenth, in what is evidently the residuary clause, the balance of the estate was left in trust with income payable to his three sons, Philip, Modesto and Michael, until Philip and Michael reached the age of 60 years, at which time the principal would be paid equally to the three sons.
In section fourteenth, the will provided that if any of the three sons should have lawful issue them surviving, they should take their parent’s share per stirpes, otherwise, the surviving son, or sons, should take the remaining share, or shares of the deceased brother, or brothers.
Loretta Accunto, life beneficiary under section ninth, died on October 4, 1959 survived by three children and her husband. She never remarried.
Philip and Modesto died unmarried and without issue. Michael Berardini is still living and the only person entitled to share in the residuary estate.
The children of Loretta Accunto claim, that even though the will provides in section ninth, that the principal be paid to them in the event of her remarriage, by implication, the testator clearly intended that they should also be the recipients of the corpus in the event of her death, as well. Petitioner Michael *787 Berardini, asserts however, that since nothing is said under section ninth as to the vesting of the principal upon the death of Loretta, the court may not supply the omission by implication, and therefore, the said principal falls into the residuary clause and passes to him as the sole survivor thereunder.
Under a narrow and literal construction, there is no disposition in section ninth of the principal, except in the event of the remarriage of Loretta. However, the intention of the testator should be ascertained not from an isolated sentence, but from a reading of the will as a whole (Tilden v. Green, 130 N. Y. 29).
When we consider the entire will, it seems clear that the testator intended to give the bulle of his estate to his lineal descendants, i.e., his children and grandchildren. Thus, we note that even though he was displeased with his son Alphonse, he nevertheless, under section twelfth, provided a trust fund for Alphonse’s children. As further evidence of his concern for his descendants, he provided that should his three sons, Philip, Modesto and Michael, die without issue, the residuary estate would pass in part, to his grandchildren, i.e., the children of Alphonse and Loretta. Furthermore, it may be observed that the three sons mentioned in the residuary clause were amply provided for. According to the transfer tax proceeding, $712,-923.73 represented their combined interests, which sum incidentally, did not include the $75,000 trust fund in dispute.
In the light of the foregoing, the court is convinced that the gift of the principal of the $75,000 trust fund to Loretta’s children is equally conditioned upon either her death or remarriage. It would seem to be a very narrow, technical and unnatural construction to suppose that the testator intended to give Loretta’s children $75,000 if she remarried, but nothing if she died. It also seems inconceivable that he had in mind that upon Loretta’s death, the money in dispute would fall to the residuary clause and swell the already huge amount that the petitioner and his two brothers were to enjoy. Furthermore, without pursuing the matter to the point of making a determination, if the trust fund falls into the residuary clause, as petitioner asserts, a serious question would probably arise as to whether the vesting would be measured by more than two lives and therefore violate the perpetuities statute applicable at the death of the testator. It is extremely unlikely that the decedent ever intended that the trust corpus would become entangled in the type of litigous snarl which would result.
From a lengthy and exhaustive study of cases, both English and American, the court is buttressed in its opinion that the *788 testator clearly intended that the principal of the $75,000 trust fund vest in Loretta’s children, either upon her remarriage or death. In Brown v. Cutter (1683) T. Raym, 427, 83 Eng. Reprint, 223, where a testator gave his wife the use of certain real estate “ during her natural life, if she do not marry * * * but if she do marry, then I will that my son Humphry shall presently after his mother’s marriage enter and enjoy the said premises, to him and the heirs male of his body ”, it was held that the son took the remainder upon the death of his mother without remarrying.
In Meeds v. Wood (1854) 19 Beav. 215, 52 Eng. Reprint, 331, where a testatrix devised a farm in trust for the benefit of an unmarried woman ‘ ‘ for her natural life * * * and I direct my executor to pay her the rents and proceeds * * * and 1 do hereby declare, that if the said Ellen Knowles shall marry or cohabit with any man, then I give, devise and bequeath, the said farm to my nephew”. The court held that the remainder to the nephew took effect at the time of her death as well as upon marriage.
The court is cognizant of the fact that in this country, in other jurisdictions, the rule also seems to be well established that a gift over, although in terms given in the event of marriage only, takes effect also upon death in the absence of any language to the contrary (Winget v. Gay, 325 Mo. 368; Ijams v. Schapiro, 138 Md. 16; Aulick v. Wallace, 12 Bush, [Ky.] 531; Maddox v. Yoe, 121 Md. 288; Bates v. Webb, 8 Mass. 458; Ferson v. Dodge, 23 Pick. [40 Mass.] 287; Matter of Nicholas, 8 Pa. Dist. R. 725).
Likewise, in New York, the same rule applies. In Matter of Schriever (221 N. Y. 268, modfg. on this point 174 App. Div. 113, affg. 91 Misc. 656), wherein the testator gave his wife the income from his estate while she remained a widow with gifts over should she remarry, the court held (p. 272) that the said gifts over were not dependent upon the widow’s remarriage, but took effect on “ termination of the life estate either by death or remarriage ”. The court further stated (p. 272):
“ It is not an unfair construction that where a testator gives to his wife a life estate with remainder over if she remarries, he has in mind the ending of the life estate by death as well. Such an idea is inevitable. Unless the will indicates that the testator intended otherwise, such a rule would ordinarily give effect to his meaning. This is especially so where, as here, he shows he has in mind the death of his wife. He speaks of the settlement of my estate or of my will — clearly the termination of the life estate by death as well as by remarriage.
*789 u Any other construction of the will is unreasonable. No satisfactory explanation can be given of a provision that would give $5,000 to a nephew if the wife remarried — nothing if she died.” (See to the same effect Matter of Morton, 32 N. Y. S. 2d 17.)
A case analogous to the matter at bar is Clowe v. Seavey (74 Misc. 254), wherein the testator bequeathed one fourth of his estate to his son and the son’s wife for their lives, for the support of themselves and their children. It was then provided (p. 256): “ In the event of the death of my said son and the remarriage of his said wife, should she survive him, I desire and direct my said trustees, John B. Clement, and John Cox, to pay to my said grandchildren, laxvful children of my son Henry S. Clement, or their descendants all the estate hereby devised to my son, Henry S. Clement, and his children as aforesaid, herein expressed.” The court held as follows (pp. 256-257):
‘ ‘ Under a narrow and literal construction there is no disposition by the will of the testator of the remainder after the termination of the trust, except in the event of the death of Henry S. Clement and the re-marriage of his widow.
“ Such, however, was clearly not the intention of the testator.
“ The provisions are very clumsily drawn, but I think their fair interpretation, in the light of the evident intent of the testator, is that during the life of his son, Henry S. Clement, and his wife, Julia Y. Clement, or the survivor of them, this one-fourth of the residue of his estate should be held in trust for the benefit of his son and his son’s wife and their children; and that, after the death of his son and his son’s wife or her re-marriage, the principal of such one-fourth of the residue of the estate should be delivered and paid to the children of his son or their descendants. * * *
“ The testator’s intent and purpose and his scheme as evidenced by the context of the will compel the conclusion that the trust should exist during the joint lives of his son and his son’s wife, unless shortened by the re-marriage of the latter; and that, upon the termination of the trust, the property should be delivered to the remaindermen, descendants of Henry S. Clement.” (See, also, Matter of Sohn, 24 N. Y. S. 350.)
Thus, the court holds that Loretta Accunto having died, the principal of the trust under section ninth is payable equally to her children, Stephen B. Accunto, Jr., Dina L. Cullen and Gloria Accunto. Submit decree on notice and in accordance herewith.